## No. 79SA444

**People of the State of Colorado, ex rel. Miles C. Cortez, Jr. v. David R. Calvert**

(617 P.2d 797)

Decided June 20, 1980.

Miles C. Cortez, Jr., Special Prosecutor, for complainant.

L. James Arthur, for respondent.

*En Banc.*

JUSTICE LOHR delivered the opinion of the Court.

Mr. Calvert, proceedings in discipline were conducted before the Grievance Committee of this court based on charges that you had violated certain provisions of the Code of Professional Responsibility. The proceedings resulted in a recommendation by the Grievance Committee that you receive a public censure and be assessed the costs of the disciplinary proceedings. We adopt the recommendation.

The formal complaint charged you with violating the following provisions of the Code of Professional Responsibility: DR 5-105 (conflict of interest); DR 2-106(A) (charging an illegal or clearly excessive fee); and DR 6-101(A)(2) (inadequate preparation). A hearings panel of the Grievance Committee found that each of these charges had been established by clear and convincing evidence.[1]

The grievance proceedings are based upon your conduct in connection with disputes among three persons whom we shall call Mr. Smith, Mr. Jones, and Ms. Ray.[2] A summary of the facts is necessary to an understanding of the nature of your misconduct. Mr. Calvert, you will be referred to as the respondent in this factual summary.

Mr. Smith and Ms. Ray met in 1969. Their relationship became close and, in 1972, Mr. Smith began living with Ms. Ray in her house in Aurora, Colorado. Ms. Ray desired that they be married formally some day, but she did not intend to enter into a common law marriage. She never represented that she was married to Mr. Smith.

As time went on, Ms. Ray became emotionally involved with Mr. Jones. In 1975 those two parties were married in a ceremony performed by a minister. Ms. Ray lived with Mr. Jones for only a short time thereafter, and then returned to her Aurora house, in which Mr. Smith had continued to live.

During the summer of 1976 Ms. Ray started sharing her time between Mr. Smith and Mr. Jones. She was in love with each of them. Each

---

[1] The formal complaint contained one additional charge, which the hearings panel found not to have been established by the evidence.

[2] The true names appear in the record; we have elected not to use them in this published opinion.

man demanded her total attention and fidelity, and the situation was emotional and filled with stress for Ms. Ray.

When Mr. Smith learned that Ms. Ray had married Mr. Jones, Mr. Smith consulted his attorney, David R. Calvert, the respondent. Mr. Smith had been introduced to the respondent by Ms. Ray, for whom respondent had performed legal services on a small matter several years earlier. After this introduction, respondent represented Mr. Smith in two matters, and by the summer of 1976 the respondent and Mr. Smith had a well established attorney-client relationship. Mr. Smith discussed the marriage of Mr. Jones and Ms. Ray with respondent by telephone. Mr. Smith advised respondent that Mr. Smith wished to have the ceremonial marriage between Mr. Jones and Ms. Ray declared invalid.

In late July or early August of 1976, when Ms. Ray was living with Mr. Jones, Mr. Smith took her to see the respondent. Mr. Smith was the dominant force in that meeting, during which Ms. Ray was accused of bigamy.[3] Mr. Smith instructed the respondent to commence suit on behalf of Ms. Ray against Mr. Jones to have their ceremonial marriage declared invalid, on the basis that there was a preexisting common law marriage between Mr. Smith and Ms. Ray. The meeting was filled with emotion. At no time during the meeting did respondent meet with Ms. Ray alone to learn her true wishes or to determine whether there were grounds for asserting that a common law marriage existed between Mr. Smith and Ms. Ray.

On August 2, 1976, the respondent obtained Ms. Ray's signature on a petition seeking to have her marriage to Mr. Jones declared invalid. The respondent signed the petition as Ms. Ray's attorney and filed it in Denver district court on August 11, 1976. (We refer to this suit as the Jones suit.) The petition is technically deficient in that it does not state grounds for asserting that the marriage was invalid.

After Mr. Jones was served with the petition in the Jones suit, he and Ms. Ray went to see Mr. Jones' attorney (attorney Breck).[4] Mr. Jones and Ms. Ray were then in complete agreement that they did not want their marriage declared invalid. Ms. Ray explained to attorney Breck that Mr. Smith had taken her to the respondent, who told her that she was a bigamist.[5] Ms. Ray stated that she had signed the petition because she did not want to go to prison. After discussing the matter with Ms. Ray, attorney Breck advised her that he seriously doubted that she was a bigamist and that, in any event, she would not go to jail as a result of the matter.

---

[3] The evidence was in conflict as to whether the accusation was made by respondent, by Mr. Smith, or by both. The hearings panel made no finding of fact on this question.

[4] "Breck" is a name arbitrarily selected; we have elected not to use attorney Breck's true name in this opinion.

[5] *See* note 3, *supra*.

He advised Ms. Ray that, if she did not want to pursue the Jones suit, she should advise the respondent of that fact, and respondent would be obligated to obtain a dismissal. Thereafter, attorney Breck prepared a response in the Jones suit, to be signed by Mr. Jones pro se.

Ms. Ray never communicated directly with respondent after the meeting which had given rise to the decision to file the Jones suit. Respondent admitted that all his contacts with respect to the Jones suit were with Mr. Smith, and that he always considered Mr. Smith to be his primary client. Ms. Ray told Mr. Smith she wanted the respondent to dismiss the action, but Mr. Smith told respondent that Ms. Ray was undecided and to hold the matter in abeyance. During the late fall of 1976, the respondent first learned from Mr. Smith that Ms. Ray wanted the Jones suit dismissed, but respondent took no action to obtain a dismissal at that time.

On February 15, 1977, Ms. Ray went to attorney Breck and discussed what she might do to get Mr. Smith out of her house. Attorney Breck wrote two letters on her behalf, the first stating that all rental money due on the house should be paid to Ms. Ray through attorney Breck's office, and the second giving notice of termination of any tenancy which Mr. Smith had in the house and requesting him to vacate the premises no later than March 15, 1977. The letters were sent to Mr. Smith.

Immediately thereafter, on February 16, respondent filed a petition on behalf of Mr. Smith in the Arapahoe County district court, alleging that Mr. Smith and Ms. Ray were married and seeking a dissolution of that marriage (the Smith suit). Based upon this new proceeding, the respondent recorded a notice of lis pendens on behalf of Mr. Smith against Ms. Ray's house. By these actions, respondent was taking at least two positions contrary to Ms. Ray's interests, i.e., (1) asserting that there was a common law marriage to Mr. Smith (if true, this made Ms. Ray a bigamist) and (2) maintaining that Mr. Smith had acquired an interest in Ms. Ray's house. At the time these positions were taken, the Jones suit was still pending and the respondent was still Ms. Ray's attorney of record in that suit.

After Mr. Smith received the February 1977 letters written by attorney Breck, respondent called attorney Breck to request that Ms. Ray accept service of process in the Smith suit. Attorney Breck expressed the opinion to respondent that respondent had a conflict of interest in the matters involving Ms. Ray. Attorney Breck also explained that his representation of Ms. Ray was limited to matters concerning removal of Mr. Smith from her house and that attorney Breck had no authority in connection with the dissolution of marriage matter. He promised to check with Ms. Ray to see if he could accept service of process. Shortly thereafter attorney Breck acquired authority to accept service of process and called respondent to inform him of that fact. In that conversation attorney Breck requested respondent to dismiss the Jones suit.

The respondent then wrote a letter to attorney Breck on February 18, 1977, acknowledging his information that Ms. Ray did not desire to go forward with the Jones suit, and offering to withdraw as Mr. Smith's counsel in the Smith suit should Ms. Ray have any objection to his continuing to represent Mr. Smith in that matter.

On March 7, 1977, Ms. Ray wrote to respondent, authorizing and requesting him to dismiss the Jones suit, expressing her belief that she was lawfully married to Mr. Jones and objecting to respondent representing anyone against her.

Respondent did not promptly take the steps to conclude the Jones suit as requested and, for more than three months, continued to represent Mr. Smith in the Smith suit. During this period respondent continued to negotiate with attorney Breck, trying to obtain Ms. Ray's agreement that Mr. Smith had a property interest in her house. Attorney Breck took the position that respondent should dismiss the Jones suit as requested, and should dismiss the Smith suit as being without merit and contrary to Ms. Ray's interests. Respondent took the position that Mr. Smith had acquired an interest in the house over the years by making house payments and improvements.

On June 15, 1977, respondent withdrew as counsel for Mr. Smith in the Smith suit. On June 16, respondent prepared a motion and order to terminate the Jones suit and forwarded it to attorney Breck, together with respondent's statement to Ms. Ray for legal services in the amount of $438.00.

The statement went unpaid. There was delay by attorney Breck in returning the motion and proposed order to terminate the Jones suit. When the motion was returned, the respondent presented it to the court and discovered for the first time that Mr. Jones had entered a pro se response, thereby requiring that a stipulation be signed by Mr. Jones before the Jones suit could be ended. Later, on November 11, 1977, a stipulation was signed by Mr. Jones and Ms. Ray agreeing that their marriage was valid and agreeing that respondent should seek a dismissal of the Jones suit. The order of dismissal was signed on December 9, 1977.

Meanwhile, in the Smith suit, the judge ruled that there was no common law marriage between Mr. Smith and Ms. Ray and dismissed that action on September 22, 1977.

█ Mr. Calvert, your conduct constituted an open and blatant violation of DR 5-105, relating to conflicts of interest. Your real loyalties were to Mr. Smith throughout the time you purported to represent Ms. Ray. This conflict commenced in the Jones suit; you should have realized that you were using Ms. Ray as an instrument to accomplish the desires of Mr. Smith. You never counseled with Ms. Ray privately to determine her wishes or to advise her as to the consequences of pursuing the various options available to her at that time. Further, in February 1977, while you

were still attorney of record for Ms. Ray in the Jones suit, you filed the petition on behalf of Mr. Smith in the Smith suit in which Ms. Ray was the opposing party. The motive for this suit was to obtain for Mr. Smith an interest in Ms. Ray's house. Such action constituted a clear and blatant assertion of a position contrary to the interests of Ms. Ray.

You did nothing to benefit Ms. Ray. You were furthering the adverse interests of Mr. Smith throughout. Under these circumstances the fee which you charged to Ms. Ray was both illegal and excessive in violation of DR 2-106.

You also violated DR 6-101(A)(2) by filing a deficient petition in the Jones suit. This violation is substantially less serious than the others and is not central to the conduct which has resulted in public censure.

Mr. Calvert, your conduct caused Ms. Ray to go through a great deal of emotional distress and concern which proper and faithful representation could have alleviated or avoided altogether. Your conduct in this case not only harmed your client but tends to bring the legal profession into disrepute with the public. You have received two letters of admonition in the past for violating the Code of Professional Responsibility. We have taken this past record into consideration in evaluating and approving the recommendation of the Grievance Committee that you be censured publicly. For the serious infractions of the Disciplinary Rules reflected in this opinion, Mr. Calvert, you are hereby publicly censured.

It is further ordered that the costs of these proceedings in the amount of $254.05 be assessed against you and that they be paid to the clerk of this court within 60 days of the date of this opinion.